

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
09/13/2011

| | | |
|---|---|---|
| IN RE: | § | Case No. 09-37774 |
| GARRETT-BECK CORPORATION; dba | § | Chapter 7 |
| GOOSE CREEK REHABILITATION & | § | |
| HEALTHCARE CENTER; aka GARRETT- | § | |
| BECK CORP.; fdba BAYTOWN NURSING | § | |
| HOME, | § | |
| Debtor(s). | § | Judge Isgur |

## MEMORANDUM OPINION & ORDER

The Court grants the motion of Business Lenders, LLC, for and on behalf of Bank of America, N.A., to determine the validity, priority, or extent of its lien claim. Bank of America has a valid, secured, first-lien position claim in the amount of $420,115.33, plus interest and legal fees, on the proceeds of the Trustee's sale of the Debtor's Medicaid-certified bed allocations.

### Background

The facts in this contested matter are undisputed. Garrett-Beck Corporation, the Debtor, operated a nursing facility before it filed for chapter 7 bankruptcy. The Debtor's nursing facility had a valuable Medicaid-certified bed allotment. When the Debtor filed for bankruptcy in October 2009, the bed allotment became part of the Debtor's bankruptcy estate.

In March 2010, the Trustee sought to sell the bed allotment for $1.2 million. ECF No. 81. Medicaid bed allotments may be transferred, but such transfers are restricted. The Debtor's Medicaid contract was terminated when the Debtor's nursing facility ceased operations. To retain its value, the bed allotment had to be recertified by the Texas Department of Human Services to another facility within twelve months of the termination. The chapter 7 Trustee therefore had a limited time in which he could sell the bed allotment, and the sale had to be approved by any lien holder on the nursing facility.

Bank of America, as a lien holder on the nursing facility, had to consent to the sale. Through a series of assignments, Bank of America holds a deed of trust on the nursing facility's real property and a security interest in personal property, including general intangibles. Bank of America consented to the sale of the bed allotment, but reserved the right to bring this contested matter to recover proceeds of the sale.

The Court approved the sale on April 21, 2010. ECF No. 97.

On May 11, 2011, Business Lenders filed a motion to determine the validity, priority, or extent of its lien claim. ECF No. 132. Business Lenders asserts a claim on the sale proceeds in the amount of $420,115.33. The Trustee filed a response in opposition on June 1, 2011, arguing

that Bank of America's lien on the proceeds should be avoided under 11 U.S.C. § 544(a)(3). ECF No. 134.

A hearing was held on July 5, 2011. The Court required additional briefing. The Trustee and Business Lenders both filed briefs on August 5, 2011. ECF Nos. 142 & 143. Business Lenders filed a response to the Trustee's brief on August 12, 2011. ECF No. 146. Creditor Reba Eichelberger filed a brief in support of avoiding the lien on August 12, 2011. ECF No. 145.

## Analysis

The parties agree in their briefs that this contested matter turns on (i) whether Bank of America's security interest in the bed allotment was perfected less than 90 days before the Debtor filed for bankruptcy; and (ii) if so, whether the Trustee can avoid the lien under 11 U.S.C. § 544(a)(3).

Bank of America's security interest in the nursing facility's real property was perfected by the deed of trust. However, Bank of America's security interest in the personal property had to be perfected by filing a UCC-1 Financing Statement. Merrill Lynch, the original lender, filed the first UCC-1. The first UCC-1 lapsed. Bank of America, Merrill Lynch's successor, filed a second UCC-1 on August 26, 2009. The Debtor filed for chapter 7 bankruptcy less than 90 days later, on October 14, 2009.

The Trustee argues that the bed allotments are personal property and that the lien had to be perfected by the two UCC-1 filings. Because the second UCC-1 was filed less than 90 days before the bankruptcy, the Trustee argues, the perfection can be avoided. If the perfection is avoided, the Trustee asserts, the Trustee can then avoid the entire lien under § 544(a)(3).

Business Lenders argues that the bed allotments were part and parcel of the nursing facility's real property. According to Business Lenders, the Texas Administrative Rules grant a statutory lien on Medicaid bed allotments to the holder of a lien on a facility's real property. 40 Tex. Admin. Code § 19.2322(c)(3). Business Lenders argues that the lien on the bed allotments was therefore perfected by the deed of trust.

The Court does not decide the issue of whether the lien on the bed allotments was or was not perfected by the deed of trust. The Trustee's argument for avoiding the lien fails under either answer.

The Trustee seeks to avoid the lien only under § 544(a)(3), which gives the Trustee the avoidance rights of "a bona fide purchaser of real property, other than fixtures." The Trustee's brief specifically states that the Trustee is not seeking to avoid the lien under § 544(a)(1), which allows the Trustee to step into the shoes of a hypothetical judgment lien creditor. The Trustee does not argue that § 544(a)(2), allowing the Trustee to assert the rights of a creditor extending credit and obtaining an unsatisfied execution, applies. The Trustee instead states that he "must employ his power under [§ 544(a)(3)]—as a purchaser for value—to avoid the lien perfection." ECF No. 142, at 5.

Section 544(a)(3) allows the avoidance only of real property transfers. The Trustee argues that the bed allotment was a general intangible, not real property. ECF No. 142, at 2. If the bed allotment was a general intangible rather than real property, the Trustee cannot use § 544(a)(3) to avoid the lien on the bed allotment.

If the bed allotment was instead real property, the Trustee still cannot avoid the lien, because it was perfected more than 90 days before the petition date. The Trustee argues that the lien had to be perfected by filing a UCC-1. ECF No. 142, at 2. If the bed allotment was real property, the lien did not have to be perfected by filing a UCC-1. In that case, Bank of America's lien was perfected by the deed of trust. The deed of trust was recorded on March 23, 2001—years before the bankruptcy filing. Unlike the second UCC-1, the deed of trust is not subject to avoidance under § 547. Therefore, if the bed allotment was real property, the lien was perfected and valid on the date of the Debtor's bankruptcy and cannot be avoided under § 544(a)(3).

Regardless of whether the bed allotment is classified as real property or personal property, Bank of America's lien on the bed allotment cannot be avoided under § 544(a)(3).

Because the Trustee specifically waives any claim under § 544(a)(1) or § 544(a)(2), the Court does not address whether a viable claim for avoidance might have arisen under those provisions.

### Conclusion

Business Lenders' motion is granted. Bank of America has a valid, secured, first-lien position claim in the amount of $420,115.33, plus interest and legal fees, on the proceeds from the sale of the bed allotment.

SIGNED **September 13, 2011.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE